IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-00139-01-CR-W-HFS |
| v. | ) | |
| | ) | |
| Ellwyn Brown, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Brown seeks district court review of a sua sponte detention order by Magistrate Larsen (Doc. 9). Defendant requested an "expedited hearing" (Doc. 12), which occurred last week. He is charged with possession of two sawed-off shotguns ("unlicensed firearms"), and apparently selling or attempting to sell them. He is also subject to State Court drug charges, and Judge Larsen found he had "participated in illegal drug transactions with Kansas City, Missouri, Police during the last year." Detention was ordered because of a serious flight risk, and the sua sponte ruling also refers to danger of further law violations. The flight rationale was based on a maximum imprisonment term of ten years and defendant's unreliability because of law violations while subject to State Court conditions of release.

Pretrial Services recommend pretrial release. The Government has not sought detention. At last week's hearing, Government's counsel made no argument, leaving evaluation to me. For reasons stated below, I conclude that public danger is not a matter for judicial consideration sua sponte and that the flight risk in this case is less than "serious;" thus, defendant is entitled to release pending trial.

Although a hearing was scheduled, the parties offered no evidence and accepted the prior record, including the purely factual findings by the Magistrate Judge. Defendant asserted a right to de novo review; this was uncontested by the Government. Although I accept

1

responsibility for de novo review of conclusory findings and legal rulings, I remain mindful of Judge Larsen's great experience in this type of proceeding and his generally excellent judgment. I am also, however, somewhat deferential of the views of Pretrial Services. The sole legal issue on sua sponte judicial consideration of detention is whether there is "a serious risk that [defendant] will flee." 18 U.S.C. § 3142(f)(2)(A).

I find no judicial characterization of what constitutes a "serious" flight risk. A 2% record of "bond jumping" is referred to as the experience in South Florida cases in the late 1900's. United States v. Jessup, 757 F.2d 378, 398 (1st Cir. 1985). That is somewhat higher than my experience would indicate and marks what I would consider as a "serious" risk. I would characterize a 1% risk as less than "serious." If my experienced guess is that there is less than a hundred-to-one chance that defendant would flee, then, considering the fiscal burdens of confinement and liberty interest of defendants, the case is one for pre-trial release. That is, I believe, the situation here, at least in a case where charges are somewhat comparable to this one.

Defense counsel argues that the inducement to flee is modest, considering that a likely sentence would be in the range of one to two years. At my request, he supports a Guideline calculation of some 18 months. (Doc. 17). As I noted at the hearing, the sawed-off shotgun aspect troubles me. It may warrant a destructive device enhancement, which would be a modest two points. United States v. Lee, 351 F.3d 350 (8th Cir. 2003). See also United States v. McCarty, 421 F.Supp.2d 220 (D. Me. 2006). What appears to be a more serious case than this one resulted in a 60 month sentence. United States v. Partington, 21 F.3d 714 (6th Cir. 1994). I doubt that defendant would be much concerned with the ten year maximum sentence authorized by statute.

Defendant's failure to observe State Court conditions of release in one respect, and his recent drug activities noted by Judge Larsen, are troubling, but point more to future law violations rather than serious flight risk. Defendant has significant family connections here and apparent family support. The report from Pretrial Services notes the willingness of an aunt who has

substantial income to co-sign a bond. Given my experience of some thirty years I think it extraordinarily unlikely that defendant would flee, particularly if his aunt cosigns a bond and would be seriously financially burdened if he violates his duty to report to court. When Judge Larsen found a serious danger of flight I doubt he used the 1% rule I am considering as a reasonable test.

A factor not known to Judge Larsen when he ruled is that this case will not be scheduled for trial until early next year. He may well have assumed that pre-trial confinement would be for two or three months. The seriousness of the confinement ruling thus became more obvious after it was made. I am advised that the continuance was not simply for convenience of defendant; it was inherent in the discovery and perhaps motion practice that is likely in related cases.

For the reasons stated, I conclude that bonding conditions and conditions of release can be devised that will preclude any serious risk of flight, and that pre-trial confinement is not authorized under the statute. The prior decision (Doc. 9) is therefore VACATED and defendant is remanded to the Magistrate Judge for further proceedings to establish appropriate bond requirements and conditions for release and termination of Defendant's detention.

/s/Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

June 11, 2013

Kansas City, Missouri